FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 12, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENISE C.,<br><br>               Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>               Defendant. | NO: 4:18-CV-5021-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 14 and 15. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney Chad L. Hatfield. The defendant is represented by Special Assistant United States Attorney Justin L. Martin. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 15, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

Plaintiff Denise C.[1] filed for supplemental security income and disability insurance benefits on May 30, 2014.  Tr. 200-12.  Plaintiff alleged an onset date of June 1, 2000, which was later amended to June 1, 2014 at the hearing.  Tr. 45, 200, 204.  Benefits were denied initially, Tr. 132-42, and upon reconsideration, Tr. 145-54.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on August 2, 2016.  Tr. 41-79.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 15-38, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 48 years old at the time of the hearing.  Tr. 47.  She completed ninth grade and did not get her GED.  Tr. 48.  At the time of the hearing, she lived

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.  In addition, the Court notes that Plaintiff's last name changed during the pendency of this litigation.

by herself. Tr. 47. Plaintiff has work history as a cook and counter attendant. Tr.

51-54, 75. She testified that she was unable to work because she hears voices and

hallucinates "all the time" and if she's around people "something will go wrong

and [she will] get mad and yell, scream, out of control, and [she] can't help it." Tr.

54. Plaintiff also testified to a history of substance abuse, including multiple

relapses on methamphetamine during the relevant adjudicatory period. Tr. 49-50.

She also reported that she uses marijuana two or three times a week to help with

sleep and staying calm. Tr. 67

Plaintiff testified that she alternates between periods of mania and

depression, sometimes on a weekly basis. Tr. 55, 58. She reported auditory

hallucinations and trouble sleeping, particularly during manic periods. Tr. 56, 59.

Plaintiff also testified that she stopped driving because of anxiety and panic, is

unable to cross intersections by herself, and has trouble with memory and

concentration. Tr. 54-55, 61, 71.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner also must consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction ("DAA"), the ALJ must determine whether the DAA is a material factor contributing to the disability. 20 C.F.R. § 416.935(a). It is the claimant's burden to prove substance addiction is

not a contributing factor material to her disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 1, 2014, the amended alleged onset date.  Tr. 21.  At step two, the ALJ found Plaintiff has the following severe impairments: bipolar disorder and substance abuse.  Tr. 21.  At step three, the ALJ found that Plaintiff's impairments, including the substance use disorders, meet Listings 12.04, 12.06, and 12.09 of 20 C.F.R. Part 404, Subpt. P, App'x 1.  Tr. 21.  However, the ALJ found that if Plaintiff stopped the substance use, she would continue to have a severe impairment or combination of impairments at step two, but the impairments would not meet or medically equal the severity of a listed impairment at step three.  Tr. 23.  The ALJ then determined that if the Plaintiff stopped the substance use, she

> would not have any exertional limitations but would have the following nonexertional limitations: the claimant has basic skills in reading and mathematics.  The claimant is able to understand and remember simple instructions, and perform simple routine tasks.  She can perform work with no contact with the public, but may have occasional superficial contact with coworkers.

Tr. 24-25.  At step four, the ALJ found that if Plaintiff stopped the substance abuse, she would be unable to perform past relevant work.  Tr. 31.  At step five, the ALJ found that if Plaintiff stopped substance abuse, considering Plaintiff's age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform, such as kitchen helper,

laundry worker II, and cleaner housekeeping.  Tr. 31-32.  Finally, the ALJ found

that substance use disorder is a contributing factor material to the determination of

disability because Plaintiff would not be disabled if she stopped the substance use.

Tr. 32.  Thus, the ALJ concluded that Plaintiff has not been disabled within the

meaning of the Social Security Act at any time from the amended alleged onset

date through the date of the decision.  Tr. 32.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II of the Social Security Act and

supplemental security income benefits under Title XVI of the Social Security Act.

ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred in finding substance abuse was material to the

   disability determination;

2. Whether the ALJ erred at step two;

3. Whether the ALJ erred at step three;

4. Whether the ALJ properly weighed the medical opinion evidence;

5. Whether the ALJ properly considered Plaintiff's symptom claims; and

6. Whether the ALJ erred at step five.

## DISCUSSION

### A. DAA Analysis

A social security claimant is not entitled to benefits "if alcoholism or drug

addiction would . . . be a contributing factor material to the Commissioner's

determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C), 1382c(a)(3)(J). Therefore, when there is medical evidence of drug or alcohol addiction, the ALJ must conduct a DAA analysis and determine whether drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007). "The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Id.* at 748.

Here, the ALJ found substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped substance use. Tr. 32. As an initial matter, Plaintiff generally argues the ALJ erred by "(1) failing to distinguish between methamphetamine use contributing to [Plaintiff's] disability and the disability remaining after she stopped

using methamphetamine;" and (2) failing to completely conduct the five-step sequential disability inquiry without separating out the impact of [Plaintiff's] past methamphetamine use." ECF No. 14 at 9-10 (internal citations omitted). However, as noted by Defendant, "the ALJ found at step three that Plaintiff's mental impairments, including the substance use disorder, met Listings 12.04, 12.06, and 12.09 because Plaintiff had marked limitations in at least two of the four areas of functioning commonly referred to as 'the paragraph B criteria.' She then performed the sequential evaluation process a second time, separating out the impact of Plaintiff's DAA, to determine if she would still be found disabled if she stopped using drugs." ECF No. 15 at 18 (citing Tr. 22-26). As part of this evaluation, the ALJ properly relied on evidence gathered from Plaintiff's undisputed period of sobriety beginning in January 2015, and extending through the date of the hearing, which indicated that "[o]nce treated and sober, [Plaintiff's] symptoms greatly reduced and her mood was later noted as stable and well controlled." Tr. 25-26 (citing Tr. 422, 427, 434, 543, 553, 576, 579, 588-89, 656-58, 702, 709, 732, 738-40); *see* SSR 13-2p at *12 (February 20, 2013), *available at* 2013 WL 621536 (directing ALJs to consider periods of abstinence from substance use including "what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. . . . To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period). Thus, the Court is

unable to discern any failure by the ALJ to follow the procedures for considering whether DAA is material to a finding of disability; rather, as noted by the ALJ in the decision, she "carefully considered the requirements of SSR 13-2p, which describes the [SSA's] policy for evaluating cases involving drug addiction and alcoholism." Tr. 25.

Second, Plaintiff argues the ALJ's DAA finding "improperly overlook[ed] substantial evidence of record." ECF No. 14 at 10 (citing Tr. 25-26). In support of this argument, Plaintiff relies on a single treatment record from April 15, 2016 that "shows [Plaintiff] presented with worsening symptoms and declining functioning"; and Global Assessment of Functioning (GAF) scores from 2015 and 2016 indicating "serious impairments in functioning" from 2015 and 2016. ECF No. 14 at 10 (citing Tr. 30-31, 678). This argument is unavailing. First, the ALJ explicitly acknowledged Plaintiff's reports of depression, anxiety, paranoid thoughts, and hallucinations in 2016 as evidence that Plaintiff still suffers from a "significant condition without the influence of substance abuse." Tr. 28 (citing Tr. 656-58). However, the ALJ further determined that "some of this appears to have been brought on by life stressors, in particular, her mother's illness"; and during the same visit Plaintiff's activities of daily living were noted as good, mood stable, speech within normal limits, normal thought process and content, no paranoid thinking, not responding to internal stimuli, and "doing very well and utilizing services optimally." Tr. 28 (citing Tr. 656-68, 747); *Burch v. Barnhart*, 400 F.3d

676, 683 (9th Cir. 2005) ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Moreover, the ALJ specifically considered the GAF scores, including those assessed during the relevant period of sobriety, and gave them little weight, because they were contradicted by the record as a whole, and only show Plaintiff's mentality at a specific time. Tr. 30-31; see *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) ("GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability"). Finally, the Court notes that the ALJ cited multiple notes from treating providers stating that Plaintiff's hallucinations and aggressive behaviors, prior to her periods of remission, were likely related to her substance abuse. Tr. 23-24, 443, 512, 833, 848, 891, 910).

Based on the foregoing, the ALJ's conclusion that Plaintiff's co-occurring mental disorders had improved to the point of nondisability in the absence of substance use, as directed by SSR 13-2p, was supported by substantial evidence. Tr. 23-24, 25-26. Thus, the ALJ did not err in finding Plaintiff's "substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if she stopped the substance use." Tr. 32.

**B. Step Two**

To be considered "severe" at step two of the sequential analysis, an impairment must significantly limit an individual's ability to perform basic work

activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); *also Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996).  An impairment that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.  SSR 96-3p, 1996 WL 374181 at *1 (July 2, 1996).  Plaintiff bears the burden to establish the existence of a severe impairment or combination of impairments, which prevent him from performing substantial gainful activity, and that the impairment or combination of impairments lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505, 404.1512(a); *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2011).  However, step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ resolved step two in Plaintiff's favor, finding Plaintiff has the following severe impairments:  bipolar disorder and substance abuse.  Tr. 21. Despite this finding, Plaintiff argues that the ALJ failed to account for additional severe impairments that have "significantly limited her ability to perform basic activities," including:  PTSD, chronic pulmonary impairments, migraine headaches, hepatitis C, GERD with chronic abdominal pain, urinary incontinence,

muscle spasms and pain in Plaintiff's neck, chronic left shoulder pain, hyponatremia, and tailbone pain. ECF No. 14 at 14-15 (citing Tr. 408, 414, 452-55, 458, 460, 466, 477, 485, 536-47, 557-60, 564-66, 571, 575-78, 588-90, 624, 829-30). The argument is inapposite for several reasons.

First, Plaintiff fails to address the ALJ's specific finding that Plaintiff's headaches are non-severe impairments because they are well-controlled with treatment and medication, and therefore have "such a minimal effect on [Plaintiff] as to not be expected to interfere with her ability to work." Tr. 21; *see Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing). Moreover, even assuming, *arguendo*, that the ALJ erred in finding the impairments identified by Plaintiff were non-severe, any error is harmless because Plaintiff fails to identify how these alleged impairments result in limitations beyond those included in the assessed RFC. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four); *see also Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination). As discussed below, the ALJ properly weighed the opinion evidence and Plaintiff's symptom claims; and as a result, the RFC incorporated the limitations supported by substantial evidence in the record. The Court finds no error at step two.

### C. Step Three

Plaintiff faults the ALJ for finding at step three that Plaintiff's mental impairment did not meet or medically equal the severity of a listed impairment. ECF No. 14 at 15-16. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. §§ 404.1525(d), 416.925(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch*, 400 F.3d at 683.

In determining whether a claimant's mental impairments meet a listing, the ALJ considers (1) whether specified diagnostic criteria ("paragraph A" criteria) are met, and (2) whether specified functional limitations ("paragraph B" criteria) are present. 20 C.F.R. § 404.1520a. To meet listing 12.04, affective disorders, or listing 12.06, anxiety related disorders, a claimant who satisfies the paragraph A criteria must meet at least two of the following paragraph B criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social

functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, Subpart P, Appendix I. "Marked" means more than moderate but less than extreme. *Id.*

Here, the ALJ found that Plaintiff impairments, including the substance use disorders, meet the criteria of Listing 12.04, 12.06, and 12.09 (by reference to Listing sections 12.04 and 12.06). Tr. 21-23. However, the ALJ ultimately concluded that if Plaintiff stopped the substance use, the severity of her mental impairments would not meet or medically equal the criteria of Listing 12.04 or 12.06. Tr. 23. Specifically, the ALJ found the "paragraph B" criteria were not satisfied because Plaintiff had only mild to moderate limitations in "paragraph B" areas of mental functioning. Tr. 23-24. Plaintiff generally contends, without citation to legal authority or specific reference to the longitudinal record, that even in the absence of substance use "she remains disabled at step three pursuant to Listings 12.04 and 12.06" due to "(1) avoidance of social interactions due to depression, panic, anxiety, and paranoia; (2) frequent inappropriate outbursts of yelling, screaming, and cursing; (3) high distractibility due to auditory hallucinations; (4) inability to complete tasks due to concentration deficits and low frustration tolerance; and (5) inability to pass GED despite multiple attempts and accommodation of extra time." ECF No. 14 at 15-16.

However, as argued by Defendant, "[t]his argument misses the mark because Plaintiff fails to explain how such evidence demonstrates that her impairments satisfy the paragraph B criteria for the relevant Listings."  ECF No. 15 at 8; *see Tackett*, 180 F.3d at 1100 (a generalized assertion of functional problems is not enough to establish that a claimant met or equaled a Listing).  Moreover, Plaintiff fails to cite medical evidence from the relevant period of sobriety, including opinion evidence, to support the argument that the ALJ erred at step three.  As noted by the ALJ, no psychological consultant designated by the Commissioner on the issue of equivalence has concluded that a mental listing is medically equaled.  Tr. 24, 87, 98, 111-12, 123-24.  Thus, as Plaintiff fails to cite specific records to support her argument that her impairments continue to meet the Listings even after stopping substance use, the Court is left to presume that Plaintiff is relying entirely on her own testimony and self-reported limitations.  *See* ECF No. 14 at 3-6 (citing Tr. 48-73, 419).  As discussed in detail below, the ALJ properly discounted Plaintiff's symptom claims.  Accordingly, Plaintiff's reliance on this evidence does not establish that the ALJ erred in failing to credit that evidence when assessing whether Plaintiff's impairments would continue to meet or medically equal Listings 12.04 and 12.06 if she stopped substance use.

Based on the foregoing, the Court finds the ALJ properly concluded, based on substantial evidence, that Plaintiff's claimed mental impairments did not meet or medically equal Listing 12.04 or 12.06 in the absence of substance use.

### D. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ improperly assessed the opinions of treating physician Sean Duffy, M.D., examining psychologist NK Marks, Ph.D., and reviewing psychologist Phyllis N. Sanchez, Ph.D. ECF No. 14 at 11-14.

### 1. Sean Duffy, M.D.

In June 2015, treating physician Dr. Duffy opined that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate; and she would miss 4 or more days of work in a 40-hour per week schedule due to "paranoia related to bipolar disorder." Tr. 414-15. The ALJ gave Dr. Duffy's opinion little weight because it "is inconsistent with the entire longitudinal record, as it was drafted in June 2015, and does not consider [Plaintiff's] treatment records for 2016 showing a well-controlled mood and largely normal mental status examinations." Tr. 30. Similarly, the ALJ noted that Plaintiff's mental health "improved immensely" after she stopped the substance use. Tr. 30.

An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion). Plaintiff argues the ALJ's reasoning was improper because it "selectively focused" on portions of the medical record that would tend to support a finding of non-disability. ECF No. 14 at 12. In support of this finding, Plaintiff relies solely on (1) her reports in April

2016 that she was experiencing depression and hypomania with excessive spending (Tr. 419); and (2) a general statement, attributed to Dr. Duffy but without citation to the record, that Plaintiff "struggles to cope with stressors in her life, which would lead to poor functioning in the workplace and deterioration due to encountering pressures therein." ECF No. 14 at 12. However, the ALJ explicitly cited consistent evidence of well-controlled mood and largely normal mental status examinations in 2016, after Plaintiff stopped the substance use. Tr. 30 (citing Tr. 422, 427, 434, 452, 463, 479, 487, 553, 576, 579, 588-89, 656-58).

Thus, regardless of evidence that could be considered more favorable to Plaintiff, the ALJ reasonably concluded that the severity of Dr. Duffy's opinion was inconsistent with the longitudinal record, including Plaintiff's performance on mental status examinations. Tr. 30; *Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). This was a specific and legitimate reason to give Dr. Duffy's opinion little weight.

### 2. *NK Marks, Ph.D.*

In July 2014, DSHS examining psychologist, Dr. Marks, completed a psychological evaluation of Plaintiff. Dr. Marks opined that Plaintiff would have moderate limitations in four categories of "basic work activities;" and marked limitations in her ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special

supervision; (2) communicate and perform effectively in a work setting; and (3) complete a normal work day and work week without interruptions from psychologically based symptoms; (4) maintain appropriate behavior in a work setting; and (5) set realistic goals and plan independently. Tr. 389-90. The ALJ gave Dr. Marks' opinion little weight for several reasons. Tr. 29.

First, the ALJ noted that "[w]hile Dr. Marks examined [Plaintiff], the opined limitations appear to be largely based off her objection statements and reports (e.g., 'self-report'). Further, he did not have access to any medical records." Tr. 29. An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff generally argues that "the ALJ improperly determined the opinion was based solely on subjective complaints, rather than Dr. Marks's professional expertise." ECF No. 14 at 13. However, as specifically noted by the ALJ, Dr. Marks indicated he did not review medical records; instead, his evaluation was based solely on the clinical interview and mental status examination. Tr. 29, 387; 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (familiarity with information in the case record is relevant to assessing the weight accorded to a medical source's opinion). Moreover, the ALJ specifically noted that Dr. Marks relied heavily on Plaintiff's "self report." Tr. 29. The Court's review of Dr. Marks' opinion indicates that the "clinical findings" were based on Plaintiff's "endorsement" of her diagnosis history and her report of

learning disabilities; the "assessment/diagnosis" section was largely based on

Plaintiff's "self report"; and even the abnormal mental status examination results in

the areas of "thought process and content" and "perception" are based on

Plaintiff's self-report of hallucinations. Tr. 388-91. For all of these reasons, and

regardless of evidence that could be considered favorable to Plaintiff, it was

reasonable for the ALJ to conclude that Dr. Marks' opinion was based in large part

on Plaintiff's properly discounted subjective complaints.[2] *See Burch*, 400 F.3d at

679 (where evidence is susceptible to more than one interpretation, the ALJ's

conclusion must be upheld). This was a specific and legitimate reason to reject Dr.

Marks' opinion.

Second, the ALJ found Dr. Marks' opinion was inconsistent with the

longitudinal record, including largely benign mental status examinations during

periods of sobriety. Tr. 29. The consistency of a medical opinion with the record

as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at

631; *see also Batson*, 359 F.3d at 1195 (an ALJ may discount an opinion that is

conclusory, brief, and unsupported by the record as a whole, or by objective

---

[2] Plaintiff also argues that the ALJ improperly discounted Plaintiff's symptom

claims. ECF No. 14 at 13. However, as discussed herein, the ALJ's rejection of

Plaintiff's symptom claims was free of legal error and supported by substantial

evidence.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23

medical findings). Plaintiff generally argues, without citation to the record, that "the longitudinal record indicates ongoing debilitating mental health symptoms since establishing sobriety in January 2015." ECF No. 14 at 13. However, in support of this finding, the ALJ cited the largely benign mental status examinations during Plaintiff's periods of sobriety. Tr. 30 (citing Tr. 339, 342, 422, 427, 434, 452, 463, 479, 487, 506, 522, 553, 576, 579, 588-89, 630, 656-68, 702, 709, 732, 738, 747, 750, 892, 910, 916). Thus, regardless of evidence that could be considered more favorable to Plaintiff, the ALJ reasonably concluded that the limitations opined by Dr. Marks were inconsistent with the longitudinal record, including the largely benign mental status examinations. Tr. 29; *Burch*, 400 F.3d at 679. This was a specific and legitimate reason to give Dr. Marks' opinion little weight.

Third, and finally, as noted by Defendant, the ALJ found that Dr. Marks' opinion was inconsistent with Plaintiff's "good activities of daily living, especially noted during periods of sobriety." Tr. 29. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The Court declines to address this issue because Plaintiff did not challenge the reason with specificity in his opening brief. *See Carmickle*, 533 F.3d at 1161 n.2.

For all of these reasons, the Court finds no error in the ALJ's rejection of Dr. Marks' opinion.

### 3. *Phyllis N. Sanchez, Ph.D.*

In July 2014, DSHS psychologist Dr. Phyllis N. Sanchez reviewed Dr. Marks' evaluation, and generally opined that the diagnoses and functional limitations opined by Dr. Marks were supported by available medical evidence. Tr. 416. The ALJ noted that Dr. Sanchez "did not have access to medical records and only reviewed Dr. Marks' report"; and that Dr. Sanchez incorrectly stated that Plaintiff "has been sober for over a decade ("per report"), which as shown [in the decision] is incorrect as [Plaintiff] has used methamphetamine multiple documented times during the relevant period." Tr. 29-30. The ALJ gave Dr. Sanchez's opinion little weight because it was "inconsistent with the longitudinal record, including benign mental status examinations, and appears to be largely based off conjecture." Tr. 30.

Plaintiff briefly argues the ALJ "improperly rejected Dr. Sanchez's opinion for the same reason she rejected [Dr. Marks'] opinion." ECF No. 14 at 14. First, the Court notes this is not an entirely accurate representation of the ALJ's findings. As discussed above, the ALJ offered additional reasons, supported by substantial evidence, for discounting Dr. Marks' opinion. Moreover, Plaintiff fails to argue with requisite specificity how the ALJ erred in considering Dr. Sanchez's opinion. *See Carmickle*, 533 F.3d at 1161 n.2. Regardless, because Dr. Sanchez's opinion was entirely premised on Dr. Marks' findings, and the ALJ properly rejected Dr. Marks' opinion in part because it was inconsistent with the longitudinal record, the

1    Court finds it was reasonable for the ALJ to rely on the same inconsistency

2    between Dr. Sanchez's opinion and the longitudinal record, including benign

3    mental status examinations, as a reason to reject her opinion.  Tr. 29-30.  The Court

4    finds no error in the ALJ's rejection of Dr. Sanchez's opinion.

5    **E. Plaintiff's Symptom Claims**

6    An ALJ engages in a two-step analysis when evaluating a claimant's

7    testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

8    whether there is objective medical evidence of an underlying impairment which

9    could reasonably be expected to produce the pain or other symptoms alleged."

10   *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

11   required to show that her impairment could reasonably be expected to cause the

12   severity of the symptom he has alleged; he need only show that it could reasonably

13   have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

14   (9th Cir. 2009) (internal quotation marks omitted).

15   Second, "[i]f the claimant meets the first test and there is no evidence of

16   malingering, the ALJ can only reject the claimant's testimony about the severity of

17   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

18   rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

19   citations and quotations omitted).  "General findings are insufficient; rather, the

20   ALJ must identify what testimony is not credible and what evidence undermines

21   the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence" for several reasons. Tr. 26.

### 1. Lack of Objective Medical Evidence

First, the ALJ found the "medical evidence does not substantiate [Plaintiff's] allegations of incapacitating mental health symptoms"; and "[t]urning to a chronological view of the record, the evidence fails to support limitations above those stated in the [RFC]." Tr. 26-28. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a

relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling limitations. Tr. 26-28. For example, Plaintiff's "allegation of difficulty concentrating, frequent panic attacks in public, and extreme difficulty getting along with others are out of proportion to her typically unremarkable presentation during appointments" where she was frequently observed as being comfortable and in no acute or apparent distress. Tr. 26 (citing Tr. 445, 452, 463, 479, 487, 576, 579, 589, 630). In addition, Plaintiff's allegations are "not entirely corroborated by objective examination findings and observations," as seen in treatment notes "often remark[ing]" that Plaintiff was calm and cooperative with largely normal speech, intact eye contact, intact cognition, appropriate grooming, alert and oriented, and with no observed thought process or thought content disturbances. Tr. 26-27 (citing Tr. 391, 422, 427, 522, 576, 579, 588-89, 709, 732, 743-44, 916).

Finally, the ALJ noted that after receiving mental health treatment, and when her substance abuse was in remission, Plaintiff's symptoms improved. Tr. 27-28; *see Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). For instance, during the adjudicatory period, the record indicates that Plaintiff used methamphetamine in June 2014, August 2014, October 2014, and January 2015.

Tr. 27 (citing Tr. 505, 512, 835, 844).  However, as noted by the ALJ, mental

status examinations only a few weeks after Plaintiff stopped substance use on each

occasion indicated that she was fully oriented with normal mental status, including

but not limited to:  normal speech, thought process and content; fair judgment and

insight; linear and goal directed thought process; good mood and congruent affect;

and normal cognitive function.  Tr. 27 (citing Tr. 339, 342, 388, 406, 506).

Moreover, Plaintiff "continued to improve once her substance abuse was in

remission" after January 2015, including improved insight and judgment with

intact cognition and full orientation; no deficits in memory; linear thought process;

good eye contact; "well regulated/stable" mood; and normal speech.  Tr. 28 (citing

Tr. 422, 427, 434, 522, 553, 576, 579, 588-89, 702, 709, 732, 738, 743-44).

Plaintiff argues that she "did not show sustained improvement, and instead

continued to demonstrate serious symptoms of bipolar."  ECF No. 14 at 18.  In

support of this argument, Plaintiff relies solely on her reports in April 2016 that she

was experiencing depression; lack of appetite; episodes of hypomania with

outbursts of anger, yelling, and meanness; and excessive spending.  Tr. 419.

However, as noted by the ALJ, at this same visit, Plaintiff's mental status

examination was "largely normal," including findings that she was pleasant,

cooperative, easy to engage, eye contact was good, motor activity was within

normal limits, mood was euthymic and well-regulated/stable, affect was congruent,

thought content and process was organized, logical, linear and goal oriented, and

insight and judgment were fair.  Tr. 28, 422.  The Court also notes that even after

setting out the medical evidence that contradicted the severity of Plaintiff's

subjective claims, the ALJ recognized that "[t]his is not to say that [Plaintiff] does

not suffer from a significant condition without the influence of substance abuse."

Tr. 28.  Specifically, the ALJ acknowledged Plaintiff's 2016 reports of depression,

anxiety, paranoid thoughts, and hallucinations.  Tr. 656-58.  However, the ALJ

also noted that these symptoms appeared to "have been brought on by life

stressors, in particular, her mother's illness"; and at the same visit Plaintiff was

noted to have stable mood, speech within normal limits, normal thought process

and content, no paranoid thinking, and was "doing very well."  Tr. 28, 656-68.

Thus, regardless of evidence that could be interpreted more favorably to the

Plaintiff, it was reasonable for the ALJ to discount Plaintiff's symptom claims

based on the lack of objective during the relevant adjudicatory period to support

those claims.  *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where

evidence is susceptible to more than one rational interpretation).  This lack of

corroboration of Plaintiff's claimed limitations by the medical evidence was a clear

and convincing reason, supported by substantial evidence, for the ALJ to discount

Plaintiff's symptom claims.

### 2. Daily Activities

Second, the ALJ noted that Plaintiff's "documented daily activities and

social functioning are inconsistent with her allegations of incapacitating mental

deficits and indicate that she is more active and independent than alleged once substance abuse was in remission." Tr. 28. Plaintiff correctly notes that a claimant need not be utterly incapacitated in order to be eligible for benefits. ECF No. 14 at 18 (citing *Fair*, 885 F.2d at 603); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, Plaintiff testified that she alternates between manic and depressed episodes; and she hears voices and hallucinates "all the time." Tr. 54-60. If she's around a lot of people "something will go wrong" and she will get mad and yell and scream; and she has aggressive thoughts about others while out in public. Tr. 26, 54. Plaintiff testified that she is able to go shopping with someone else, cannot cross intersections, has trouble leaving her house, needs reminders to shower, and does not cook for herself. Tr. 60-61, 69-70. However, as noted by the ALJ, the overall record "indicates that [Plaintiff] is independent in her activities of daily living." Tr. 28.

Plaintiff generally argues, without citation to the record, that the ALJ erred in discounting Plaintiff's testimony because the ALJ "(1) improperly overstated [Plaintiff's] activities; and (2) failed to identify how such activities were

inconsistent with the disabling limitations." ECF No. 14 at 19. However, the ALJ

specifically noted that Plaintiff testified to having trouble being around others,

completing tasks, and concentrating; however, the record indicates that Plaintiff

watches movies which is "indicative of her ability to follow long programs"; goes

shopping; attends appointments; utilizes public transportation; walks to the grocery

store as part of her daily routine; spends time with friends, family, and her

significant other; and manages her finances. Tr. 29 (citing Tr. 55, 72-73, 272-73,

388, 422, 426, 447-48, 625, 656, 709, 731-32). The ALJ further noted that the

record does not support Plaintiff's testimony that she has to be accompanied by

another person when shopping; and despite reporting some difficulty in grooming,

Plaintiff is noted to be well-groomed throughout the record. Tr. 29.

Thus, regardless of whether the evidence could be viewed more favorably to

Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's documented

daily activities and social functioning were inconsistent with her allegations of

incapacitating mental limitations. Tr. 28-29; *Molina*, 674 F.3d at 1113 (Plaintiff's

activities may be grounds for discrediting Plaintiff's testimony to the extent that

they contradict claims of a totally debilitating impairment); *Burch*, 400 F.3d at 679.

This was a clear and convincing reason to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons,

supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**F. Step Five**

Finally, Plaintiff argues the ALJ improperly rejected the medical opinions and Plaintiff's subjective testimony, and therefore erred at step five by posing an incomplete hypothetical to the vocational expert. ECF No. 14 at 19-20. Plaintiff is correct that "[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray,* 554 F.3d at 1228 (citation and quotation marks omitted). However, as discussed in detail above, the ALJ's rejection of the medical opinions and Plaintiff's symptom claims, was supported by the record and free of legal error. The hypothetical proposed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record. The ALJ did not err at step five

**CONCLUSION**

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ's finding that Plaintiff's substance use was material to the determination of disability was supported by substantial evidence. Further, the ALJ properly evaluated Plaintiff's impairments at step two; properly found Plaintiff's mental impairment did not meet or medically equal a Listing at step three; properly weighed the medical opinion

evidence; provided clear and convincing reasons to discount Plaintiff's symptom testimony; and did not err at step five. After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** February 12, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge